UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
:
RICHARD BROWN,                                                     :
:
                            Petitioner,                            :
:
            -v-                                                     :          12-cv-4210 (KBF)
:
ROBERT CUNNINGHAM,                                                 :          OPINION & ORDER
:
                            Respondent.                            :
:
------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 2, 2016

KATHERINE B. FORREST, District Judge:

On May 25, 2012, petitioner Richard Brown filed a pro se petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 2.) He filed an amended

petition on December 17, 2012 (ECF No. 9), and a second amended petition (the

"Second Amended Petition")—which is the current operative petition—on January

27, 2013. (Second Am. Pet. for Writ of Habeas Corpus ("Second Am. Pet."), ECF No.

11.) Petitioner seeks relied from the May 6, 2009 judgment of the Supreme Court of

the State of New York, New York County, convicting him, after a jury trial, of

criminal possession of a controlled substance in the first degree (N.Y. Penal Law §

220.21(1)), and sentencing him to a determinate prison term of eight years, followed

by five years of post-release supervision.

On March 22, 2011, the New York State Appellate Division, First

Department, unanimously affirmed petitioner's judgment of conviction. People v.

Brown, 82 A.D.3d 585 (1st Dep't 2011). On June 29, 2011, the New York Court of

Appeals denied petitioner's leave to appeal. People v. Brown, 17 N.Y.3d 792 (2011).

Petitioner currently lives in Jamaica, having been deported following his period of incarceration.

In his Second Amended Petition, petitioner challenges his conviction on the sole ground that he received ineffective assistance of appellate counsel. Petitioner argues that his appellate counsel's performance was constitutionally deficient for failure to challenge the effectiveness of trial counsel, who petitioner argues did not present a viable defense or raise other viable claims. The State argues that the Second Amended Petition should be dismissed on the grounds that it is untimely under AEDPA's one-year statute of limitations and because petitioner did receive effective assistance of appellate counsel in his state court proceeding.

For the reasons set forth below, Brown's request for habeas relief is DENIED.

I.    FACTUAL BACKGROUND

On the evening of December 6, 2007, police officers Kevin Sam, Maurice Porter, Victor Perez, and Robinson Mercado were on duty in the vicinity of Morris Avenue and East 196th Street in the Bronx, New York. (October 15, 2008 Suppression Hearing Tr. ("Hearing Tr.") at 8-9, 13, ECF No. 22-2.) The officers— who were in plain clothes—were assigned to target trespassers or loiterers in various buildings as part of the New York City Police Department's "Clean Halls" program, which was designed to root out drug dealers and trespassers inside the lobbies and hallways of those buildings. (Hearing Tr. 7.)

At approximately 10:30 p.m., the officers began to conduct a sweep of 2707 Morris Avenue, searching the building floor by floor for trespassers. (Hearing Tr. 20-22.) Officers Sam and Porter proceeded up the building's only staircase and,

2

upon reaching the second floor landing, Officer Sam saw petitioner standing in the middle of the hallway and holding a "red drawstring Gap bag." (Hearing Tr. 23-29.) Officer Sam could not see inside the bag because it was opaque and cinched at the top, but saw that it appeared to be full. (Hearing Tr. 48.) After Officer Sam alerted Officer Porter to petitioner's presence, both officers stopped on the staircase and turned toward petitioner. (Hearing Tr. 46-47.) Petitioner looked over his shoulder and saw the officers staring at him, and then turned his back to them and walked towards an apartment door that was three feet away. (Hearing Tr. 28-29, 47.) Petitioner did not knock on the door or take out a key, but instead stood there while the officers continued to watch him. (Hearing Tr. 30.)

After waiting approximately one minute, Officer Sam walked toward petitioner and reached inside his shirt and pulled out his badge. (Hearing Tr. 30-31, 48-50, 54-56.) As Officer Sam was about to identify himself, petitioner spun around and shoved Officer Sam, causing him to fall backwards to the ground. (Hearing Tr. 31, 50.) Petitioner then "hopped" over Officer Sam and quickly ran down the staircase toward the building's lobby. (Hearing Tr. 31.)

Officers Sam and Porter chased petitioner with the intention to affect an arrest for harassment. (Hearing Tr. 31-32, 42.) As petitioner ran, he looked back at the officers and tripped and fell down the stairs. (Hearing Tr. 32-33.) When petitioner fell, the red Gap bag that petitioner was carrying fell out of his hand onto the floor and opened up a "little bit," exposing about half of a "brick" of cocaine. (Hearing Tr. 33-34, 52.) There was also a "white powdery substance in the air as

well as on the ground surrounding the bag." (Hearing Tr. 33.) Petitioner then screamed out, "my foot is broken" and "I'm being robbed." (Hearing Tr. 34-35.)

Moments later, Officers Mercado and Perez arrived, identifying themselves as police officers and asking what was going on. (Hearing Tr. 35.) Officer Sam replied, "this is what's going on" and showed Officers Mercado and Perez the top of the brick of cocaine protruding from the bag, which was within one foot of petitioner. (Hearing Tr. 35.) Officer Sam then looked inside the bag and found six individually wrapped packages of cocaine, a scale, and some empty plastic 'baggies." (Hearing Tr. 35-36.) The officers placed petitioner under arrest, and Officer Mercado searched him, recovering $1,578 in cash from petitioner's pants pocket and a key that petitioner was trying to hide in his sleeve. (Hearing Tr. 36-37.)

II.   PROCEDURAL HISTORY

A.   Petitioner's Motion to Suppress

Prior to trial, petitioner moved to suppress the physical evidence recovered during his arrest, arguing that the officers' pursuit of petitioner was unlawful because his response to Officer Sam's approach in the hallway was objectively reasonable, given that the officers had not identified themselves. (See Gill Decl., Ex. A at 3, ECF No. 22-1.) In an oral decision delivered from the bench, the New York Supreme Court found that the testimony adduced from Officer Sam at the suppression hearing was credible and made findings of fact that tracked that testimony. (See October 22, 2008 Hearing Decision, ECF No. 22-2.) Based on those facts, the court concluded that the officers acted reasonably and denied petitioner's motion to suppress in its entirety. (Id. at 14.)

B.     Trial and Sentence

Petitioner's case proceeded to trial before a jury in the New York Supreme Court, New York County, on February 2, 2009.  At trial, the parties stipulated that the evidence recovered on the night of December 6, 2007 contained cocaine and that its weight was the equivalent of 3.128 pounds.  (Resp't's Mem. of Law in Opp'n to Second Am. Pet. for a Writ of Habeas Corpus ("Resp't Mem.") at 5, ECF No. 30.) The People presented the testimony of the four police officers who were on duty at the scene of petitioner's arrest—Officers Sam, Porter, Perez, and Mercado—and also presented the testimony of an expert witness, Jason Robles, who testified about the packaging, price and sale of illegal narcotics.  (Resp't Mem. at 5; see Trial Tr., ECF Nos. 22-2, 22-3, 22-4.)

As part of the defense case, petitioner testified on his own behalf that on the night of December 6, 2007, he was at 2707 Morris Avenue babysitting for his sister-in-law, Francine Voliton; Voliton also testified on petitioner's behalf.  (Resp't Mem. at 6; Trial Tr. 191-242.)  Petitioner and Voliton testified that petitioner left Voliton's apartment at approximately 10:30 p.m. and discovered the bag of cocaine in the middle of the building's stairway.  (Resp't Mem. at 6.)  They testified that petitioner told Voliton to call the police, who then locked the door and did so, informing the police that someone was being robbed.  (Resp't Mem. at 6.)  Petitioner testified that he then encountered Officers Sam and Porter, but did not know that they were police officers.  (Resp't Mem. at 6.)  Petitioner explained that he believed Officer Sam was reaching for a gun when he reached inside his jacket for his police shield. (Resp't Mem. at 6.)

5

At the conclusion of trial, the jury convicted petitioner of criminal possession of a controlled substance in the first degree, and acquitted him of criminal possession of a controlled substance in the third degree and of criminally using drug paraphernalia in the second degree.  (Trial Tr. 325-29.)  On May 6, 2009, the New York Supreme Court sentenced petitioner to a determinate term of incarceration of eight years, followed by five years of post-release supervision.  (Resp't Mem. at 6; see May 6, 2009 Sentencing Tr., ECF No. 22-4.)

C.    Direct Appeal

Petitioner appealed his conviction, through new counsel, in the New York State Appellate Division, First Department, claiming that the police illegally seized petitioner and that the trial court improperly denied his motion to suppress physical evidence in violation of the Fourth Amendment.  (Gill Decl., Ex. A at 14-19.)  On March 22, 2011, the Appellate Division affirmed the judgment of conviction, rejecting petitioner's Fourth Amendment claim.  People v. Brown, 82 A.D.3d 585 (1st Dep't 2011).  Petitioner then sought leave to appeal his Fourth Amendment claim to the New York Court of Appeals; that Court denied petitioner's leave to appeal on June 29, 2011.  People v. Brown, 17 N.Y.3d 792 (2011).

D.    Petition for Error Coram Nobis

On December 14, 2012, petitioner filed a motion in the New York State Appellate Division for a writ of error coram nobis, arguing that appellate counsel had provided ineffective assistance.  (State Court Record ("SR") at 2-30, ECF No. 33-1.)  The motion argued that appellate counsel's performance was deficient because he did not raise a claim that trial counsel's performance was ineffective for

failure to raise a credible defense at trial.  Specifically, petitioner claimed that, <u>inter alia</u>, trial counsel's decision to place him and Voliton on as witnesses "was not a defense," trial counsel should have pursued other evidence, and trial counsel should not have stipulated to the fact that the seized evidence contained cocaine.  (SR at 22-26.)  Petitioner also argued that trial counsel's performance was deficient for failure to raise the issue of subject matter jurisdiction, as the case was tried in New York County, whereas the crime occurred in Bronx County.  (SR at 26-30.)  The Appellate Division denied the motion on September 3, 2013.  (SR at 54.)  On October 31, 2013, the New York Court of Appeals denied petitioner's application for leave to appeal that decision.  (SR at 58; <u>see</u> ECF No. 37.)

     E.    <u>Petitions for Habeas Relief in this Court</u>

On May 21, 2012, petitioner filed his initial petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that the trial court improperly denied his motion to suppress physical evidence based on a violation of the Fourth Amendment.  (ECF No. 2.)  In an Order dated June 22, 2012, Chief Judge Loretta A. Preska granted petitioner leave to file an amended petition within sixty days to assert, if applicable, that he was precluded from litigating his Fourth Amendment claim in state court or to present any other grounds that he had fully exhausted in state court.  (ECF No. 5.)  The Order explained that federal habeas relief is not available to state prisoners alleging that state courts improperly allowed into evidence the fruits of an allegedly unconstitutional search or seizure.

On October 24, 2012, the Court received a letter from petitioner dated October 12, 2012 (ECF No. 7), which the Court construed—in a December 7, 2012

Order—as a request for an extension of time to file an amended petition (ECF No. 8).  The December 7 Order granted petitioner an extension of another sixty days to file an amended petition; Chief Judge Preska also made clear, however, that the Court has no authority to extend the statute of limitations governing habeas cases. (ECF No. 8.)

On December 9, 2012, petitioner filed an amended petition for habeas relief, asserting that appellate counsel's performance was constitutionally deficient for failure to raise the issue of trial counsel's ineffectiveness.  (ECF No. 9.)  In an Order dated January 14, 2013, Chief Judge Preska granted petitioner leave to submit a second amended petition within sixty days to clarify whether he exhausted state court remedies for his ineffective assistance claim, explaining that the amended petition did not make clear whether petitioner had done so and that it did not explain what specific defenses or claims trial counsel failed to pursue on his behalf. (ECF No. 10.)

On January 27, 2013, petitioner filed the operative Second Amended Petition, again arguing that appellate counsel provided him with ineffective assistance. (ECF No. 11.)  The Second Amended Petition alleges that petitioner presented his ineffective assistance claim in a writ of error coram nobis filed in the New York State Appellative Division on December 14, 2012 (a proceeding which the Court has explained above).  On March 6, 2013, Chief Judge Preska issued an Order directing petitioner to file an affirmation within sixty days showing cause why his petition should not be dismissed as time-barred and to provide any facts supporting the

argument that the statute of limitations should be equitably tolled.  (ECF No. 12.)
The March 6 Order observed that "Petitioner's application appears to be untimely"
and stated that petitioner's <u>coram nobis</u> petition was filed "approximately two and a
half months late."  (ECF No. 12.)

On March 27, 2013, petitioner filed an Affirmation in which he argued that
"extraordinary" circumstances prevented him from making a timely post-conviction
motion in state court for ineffective assistance of appellate counsel.  (ECF No. 13.)
Petitioner explained that the staff at Fishkill Correctional Facility did not forward
his legal mail for more than three months after he moved to another facility, which
delayed his receipt of the Court's June 22, 2012 Order.  Petitioner stated that he
could not have presented an exhausted ineffectiveness claim in the time allotted in
the Court's June 22, 2012 Order because only one issue had—at the time of that
Order—been raised in state court.  Petitioner argued that if his mail had not been
held for three months, he would have been able to file his <u>coram nobis</u> motion in
state court in August or September 2012, rather than in December 2012.

On April 18, 2013, this action was reassigned to Judge Thomas P. Griesa.
(ECF No. 14.)  On May 8, 2013, Judge Griesa issued an Order directing the State to
respond to the petition within sixty days, and petitioner to file any reply papers
within thirty days after the State's response.  (ECF No. 16.)  After Judge Griesa
granted two extension requests by the State (ECF Nos. 17, 18), the State filed
opposition papers on August 15, 2013 (ECF No. 20).

The State subsequently submitted a letter, dated the following day—August 16, 2013—indicating that the State's opposition brief was intended as a response to petitioner's original May 25, 2012 petition and did not respond to the arguments raised in petitioner's amended petitions.  (ECF No. 35.)  The letter argued that the Second Amended Petition should be deemed untimely and expressed the State's (erroneous) belief that petitioner filed his <u>coram nobis</u> motion on March 21, 2013. The State requested that if the Court sought to direct the State to further respond to the Second Amended Petition, that the Court await the conclusion of petitioner's post-conviction state court litigation.

In a letter dated August 21, 2013, petitioner submitted a reply to the Government's August 15 opposition brief and August 16 letter.  (ECF No. 36.) Petitioner observed that the State's opposition was directed to his previously rejected Fourth Amendment claim, and argued that the State's letter misrepresented the facts when it stated that his <u>coram nobis</u> petition had been filed on March 21, 2013, rather than on December 14, 2012.  Petitioner also argued that by transferring this action to Judge Griesa, Chief Judge Preska had accepted petitioner's justification for delaying his Second Amended Petition, thus deeming it to be timely.

On January 29, 2015, Judge Griesa issued an Order that referenced the State's August 16, 2013 letter and indicated that the State had not yet submitted an opposition brief addressing the operative Second Amended Petition.  (ECF No. 25.) The January 29 Order directed the State to file a response to the Second Amended

10

Petition within sixty days, and directed petitioner to file any reply within 30 days thereafter.

After Judge Griesa granted two further extension requests by the State (ECF Nos. 27, 29), the State filed its opposition to the Second Amended Petition on May 20, 2015 (ECF No. 30).

On January 15, 2016, this action was reassigned to the undersigned. To date—more than nine months since the State filed its opposition to the Second Amended Petition—petitioner has not submitted a reply.

III.   LEGAL FRAMEWORK

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires that in order for a petitioner to prevail on a petition for habeas corpus, he must demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(l)-(2).  A petitioner shows that a state court's decision is contrary to clearly applicable federal law "by demonstrating either (1) that the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) that, when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent, the state court arrived at a result opposite to the one reached by the Supreme Court."  Evans v. Fischer, 712 F.3d 125, 132-33 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)) (internal quotation marks omitted).  A petitioner demonstrates that a state court decision was based on an unreasonable

11

application of federal law by proving that the state court "unreasonably applied" federal legal principles "to the facts of the case before it . . . involv[ing] some increment of incorrectness beyond error." Id. at 133 (internal quotation marks and citation omitted).

Those seeking habeas relief face a high burden and a reviewing court must give a state court decision due deference. See Harrington v. Richter, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."); Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (noting that § 2254's "highly deferential" standard "demands that state-court decisions be given the benefit of the doubt"). Indeed, state court decisions are presumed to be correct, and petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Habeas will not be granted "merely because there is a reasonable possibility that trial error contributed to the verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

IV.   DISCUSSION

The State argues that the Second Amended Petition should be denied because it is time-barred under AEDPA's one-year statute of limitations and because petitioner's claim fails on the merits, as he has not shown that the state court proceedings involved an unreasonable application of clearly established federal law or that the proceedings rested on an unreasonable determination of the facts.  For the reasons set forth below, the Court denies petitioner's request for habeas relief on both grounds.

A.     <u>Timeliness</u>

Pursuant to AEDPA, state prisoners seeking habeas review must adhere to a one-year statute of limitation.  28 U.S.C. § 2244(d)(1)(A); <u>see</u>, <u>e.g.</u>, <u>Atkins v. Gonyea</u>, No. 12 Civ. 9186, 2014 WL 199513, at *1 (S .D.N.Y. Jan. 17, 2014); <u>Simmons v. Brown</u>, No. 08 Civ. 1425, 2011 WL 2133844, at *5 (E.D.N.Y. May 26, 2011); <u>Ruiz v. Poole</u>, 566 F. Supp. 2d 336, 340 (S.D.N.Y. 2008).

Generally, the statute begins to run on "the date on which the [petitioner's] judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  "[A] conviction becomes final 90 days after the highest court affirms the conviction, assuming no petition for a writ of certiorari is filed."  <u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir. 2001); <u>see also</u> <u>United States v. Becker</u>, 502 F.3d 122, 127 n.2 (2d Cir. 2007).  However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2); <u>Acosta v. Artuz</u>, 221 F.3d 117, 119 (2d Cir. 2000).

The New York Court of Appeals denied petitioner's leave to file an appeal on June 29, 2011.  His conviction therefore became final on September 27, 2011, when his time to file a petition for a writ of certiorari in the United States Supreme Court expired.  Under AEDPA, petitioner had one year from that date—i.e. September 27, 2012—to file his habeas petition.  Although a properly filed application for state post-conviction relief tolls the limitations period, petitioner did not file his <u>coram</u>

13

nobis petition in state court until December 14, 2012, nearly three months after
AEDPA's limitations period expired.  While petitioner's initial petition, dated May
21, 2012, raising a Fourth Amendment claim, was timely, his two amended
petitions, dated December 9, 2012 and January 27, 2013, respectively, raising his
ineffective assistance of appellate counsel claim, fell outside the limitations period.
Therefore, unless petitioner's amended petitions relate back to his initial petition,
or the Court finds that equitable tolling is warranted, his amended petitions are
time-barred.  As explained below, the Court concludes that petitioner's amended
petitions do not relate back to his initial petition and he has not presented
circumstances sufficient to warrant equitable tolling.

      First, petitioner's ineffective assistance claim does not relate back to the
Fourth Amendment claim that he raised in his original petition.  "An amended
habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time
limit) when it asserts a new ground for relief supported by facts that differ in both
time and type from those the original pleading set forth."  Mayle v. Felix, 545 U.S.
644, 650 (2005).  To determine if an amended filing relates back, the pertinent
question is whether the "original complaint gave the defendant fair notice of the
newly alleged claims."  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 815 (2d Cir.
2000).

      Petitioner's ineffective assistance claim, in which he asserts that appellate
counsel should have argued that trial counsel failed to present a viable defense or
raise issues such as the trial court's subject matter jurisdiction, plainly raises

different issues, and relies on different facts, than petitioner's claim that his Fourth Amendment rights were violated when the trial court denied his motion to suppress physical evidence obtained on the night of his arrest.  The two claims involve entirely different stages of the state court proceedings and are of a wholly different character.  The amended petitions thus do not relate back to the initial one.

Second, the "extraordinary circumstances" that petitioner identifies in his Affirmation do not warrant applying equitable tolling to extend the limitations period.  A petitioner seeking equitable tolling under AEDPA must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "While equitable tolling is warranted only in rare and exceptional circumstances, courts do not apply its requirements mechanistically," but rather "the exercise of a court's equity powers must be made on a case-by-case basis." Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011) (quotation marks and citations omitted).  Petitioner claims that he is entitled to equitable tolling for the approximately three months that prison staff delayed in forwarding to his new facility the Court's June 22, 2012 Order that granted him permission to file an amended petition addressing any claims that had been fully exhausted in state court.  Petitioner also argues that Chief Judge Preska accepted (at least implicitly) his justification for delaying his filing of the amended petition by transferring the action to Judge Griesa.

Petitioner's explanation fails to present extraordinary circumstances that prevented him from timely seeking post-conviction relief in state court before

September 27, 2012.  Although a several month delay in a prisoner's receipt of a court ruling may justify the application of equitable tolling in certain contexts, see Saunders v. Senkowski, 587 F.3d 543, 550 (2d Cir. 2009); Diaz v. Kelly, 515 F.3d 149, 154-55 (2d Cir. 2008), the facts presented here do not warrant such treatment. In contrast to Diaz, in which the Second Circuit concluded that the petitioner could benefit from equitable tolling where the state court did not provide the petitioner with notice of the rejection of his collateral attack until several months after that decision was rendered, Diaz, 515 F.3d at 155, the delay in petitioner's receipt of the Court's June 22, 2012 Order had no bearing on his knowledge of the information necessary to allow him to timely exhaust his state court remedies.  Petitioner had the facts necessary to put him on notice that AEDPA's statute of limitations would begin to run when he received notice of the New York Court of Appeals' denial of his request for leave to appeal—a ruling that petitioner does not argue he received in an untimely fashion.  It was at that time that petitioner had the facts necessary to prepare a timely motion for post-conviction relief in state court regarding ineffective assistance of appellate counsel.

This Court's June 22, 2012 Order, which advised petitioner that if he brought an amended petition he would have to assert claims that had been exhausted in state court, was not a necessary trigger—or a grant of permission—for petitioner to commence the process for state court exhaustion.  Rather, the Court's Order merely cautioned petitioner as to the necessary prerequisites to allow any claims raised in an amended petition to receive consideration on the merits.  The Court did not

purport to indicate whether petitioner could successfully meet the prerequisites for presenting a timely, fully exhausted claim. As for petitioner's argument that Chief Judge Preska has already accepted his Second Amended Petition as timely, that argument is without merit. Petitioner reads far too much into Chief Judge Preska's transfer of this action to Judge Griesa, which can in no way be interpreted as a determination of the availability of equitable tolling.

For the foregoing reasons, petitioner's Second Amended Petition is time-barred pursuant to AEDPA's one-year statute of limitations.

B.    Ineffective Assistance of Counsel

Petitioner's sole claim for habeas relief in his Second Amended Petition is that his appellate counsel was constitutionally deficient for failing to challenge the effectiveness of trial counsel. Petitioner asserts several basis as to why trial counsel provided ineffective assistance. First, petitioner argues that trial counsel did not prepare a constitutionally adequate defense because she: (a) failed to challenge the discrepancy in the timeline of events described by the officers in their trial testimony, (b) did not pursue missing business records that petitioner claims were located in his car at the time of his arrest, (c) did not call a police officer as a witness whom petitioner claims would have described the business records found in his car, and (d) improperly stipulated to the presence of cocaine in the substance seized from the red Gap bag and the weight of that substance. (SR at 9-13.) Second, petitioner argues that trial counsel failed to raise the claim that the state court that tried him—the New York Supreme Court, New York County—lacked jurisdiction because the alleged crime took place in a building in Bronx County. (SR

17

at 13-17.)  In explaining appellate counsel's deficiency in failing to raise these issues, petitioner states that the Fourth Amendment claim that appellate counsel did raise was "a strong issue," but argues that "the issue of ineffective assistance of trial counsel for failure to prepare a defense was even stronger."  (SR at 10.)

To prevail on an ineffective assistance of counsel claim, petitioner must meet two requirements.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  First, petitioner must demonstrate that counsel's performance was "fundamentally defective."  Id.  It is insufficient to show that counsel merely omitted a "nonfrivolous argument" because counsel is not required to advance every argument that could be made.  Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).  Rather, in order to prove deficient performance, petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness" under "prevailing professional norms."  Strickland, 466 U.S. at 688; see also Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] petitioner may establish constitutionally inadequate performance [of appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.").  "Judicial scrutiny of counsel's performance must be highly deferential," with a strong presumption that "the challenged action 'might be considered sound trial strategy'" in light of the particular facts of the case and the time of counsel's conduct.  Strickland, 466 U.S. at 689.

Second, petitioner must prove that the errors were so prejudicial that they deprived him of a fair trial.  Id. at 686.  Error, even if "professionally unreasonable,"

does not warrant setting aside a judgment if the error had no effect on the outcome. Id. at 691.  Moreover, it is not enough to show that the errors "had some conceivable effect on the outcome."  Id. at 693.  Rather, petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Even if petitioner's Second Amended Petition was not time-barred, it is clear that he has not met his burden under either prong of Strickland.

First, petitioner cannot show that his appellate counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Petitioner's appellate counsel filed a 19-page brief on his behalf that raised a Fourth Amendment claim which petitioner himself concedes was a "strong issue."  (SR at 10; see Gill Decl., Ex. A.)  Although appellate counsel's Fourth Amendment argument was not successful, the record shows that it was far stronger than a claim of ineffective assistance of trial counsel would have been based on the record presented here.  Such an ineffectiveness claim would have had a low likelihood of success given that trial counsel did present the testimony of petitioner and his sister-in-law, Francine Voliton, who both asserted that petitioner found the bag of drugs in the hallway of Voliton's building.  The jury's rejection of petitioner's defense does not mean that counsel's performance was constitutionally inadequate, and it is not this Court's role to "second-guess" trial counsel's strategic choices. Mayo, 12 F.3d at 533.

The particular failings of trial counsel that petitioner pointed out in his motion for a writ of <u>coram nobis</u> and in his Second Amended Petition would not, moreover, have been persuasive to the Appellate Division if appellate counsel had raised these issues.  First, the discrepancy identified by petitioner—relating to the time at which the officers arrived at 2707 Morris Avenue—was entirely irrelevant to the charged crimes and petitioner's innocent explanation for his possession of the bag of drugs.  Second, trial counsel's failure to obtain and present documents showing that petitioner was in New York on business was tangential to petitioner's innocent explanation for possessing the bag of drugs in the hallway.  Third, calling a police officer witness to explain that business records were found in petitioner's car would also not have corroborated petitioner's innocent explanation for possessing the bag of drugs.  Fourth, in light of petitioner's innocent explanation for possessing the bag (i.e. that he just found the bag and picked it up), he cannot show that trial counsel's performance was constitutionally deficient by stipulating to the presence and weight of the seized cocaine.  Fifth, petitioner's argument that the New York Supreme Court, New York County, lacked jurisdiction to try petitioner for the charged crimes is meritless and would have been found so by the Appellate Division.  <u>See</u> N.Y. Judiciary Law § 177-a; <u>People v. Rodriguez y Paz</u>, 58 N.Y.2d 327, 333-34 (1983).

Second, even if appellate counsel successfully demonstrated that trial counsel's performance was constitutionally deficient, petitioner has not shown a reasonable probability that the outcome of his state court appeal would have been

any different.  The evidence at trial was overwhelming, and petitioner has failed to present facts sufficient to show that the Appellate Division would have found that petitioner was prejudiced by trial counsel's purported failings.

V.      CONCLUSION

For the reasons set forth above, the Court DENIES petitioner's request for habeas relief.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c).  Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is hereby directed to dismiss the pending petition and terminate this action.

SO ORDERED.

Dated:      New York, New York
            March 2, 2016


                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge


Copy to:
14 Daisy Ave.
Kingston 6
West Indies
Jamaica
PRO SE